# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Seizure of )
One Magnum Research Desert Eagle Pistol, )
SN:DK0054306 )  Case No. 4:20MJ7113 SPM
)
)

**FILED**

MAR 06 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

**I, Eric B. Mills, being duly sworn depose and say:**

**I am a Special Agent with the Federal Bureau of Investigation, and have reason to believe that there is now certain property namely**

One Magnum Research Desert Eagle Pistol, SN:DK0054306

**which is**

subject to forfeiture under Title 18, United States Code, Sections 981(a) and 982(a) and Title 28, United States Code, Section 2461, and therefore, is subject to seizure under Title 18, United States Code, Sections 981(b) & 982(b) and Title 21, United States Code, Sections 853(e)&(f) concerning a violation of Title 18, United States Code, Section 1343.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

**Continued on the attached sheet and made a part hereof.**    X   Yes ___ No

*Eric Mills*
**Signature of Affiant**, Eric B. Mills

**Sworn to before me, and subscribed in my presence**

March 6, 2020 ; 16:06                                    at   St. Louis, Missouri
**Date and Time Issued**                                     **City and State**

Honorable Shirley P. Mensah, U.S. Magistrate Judge
**Name and Title of Judicial Officer**                       **Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

1. I, Eric B. Mills, am a Special Agent with the Federal Bureau of Investigation and have been so employed for the past 18 years. I am assigned to the St. Louis, Missouri, field office where I have specialized in white collar crime and fraud investigations of various kinds for the past 18 years. I am responsible for, among other assignments, conducting investigations of alleged criminal violations of Title 18, United States Code, Sections 1343, wire fraud; 1344, bank fraud; and Section 1957, the money laundering spending statute.

2. I have personally participated in investigations involving the violations of federal law regarding mail fraud, wire fraud and other federal violations such as money laundering that result from such unlawful activity. I have personally participated in the execution of search warrants and seizure warrants, involving the search for various types of evidence and property. As a federal agent, I am authorized to investigate violations of the laws of the United States and to seek forfeiture of property under the authority of the United States.

3. Since approximately February 24, 2020, I have been investigating a wire fraud and money laundering scheme involving Christen Diane Schulte ("Schulte"), the former bookkeeper at Maczuk Farms, Inc. & Maczuk Farms Trucking, LLC (collectively "Maczuk"). Based on the results of my investigation, there is probable cause to believe that, between approximately January 25, 2018, and February 4, 2020, Schulte perpetrated a bank and wire fraud scheme in violation of 18 U.S.C. §§ 1343 and 1344 wherein she embezzled more than $530,000 from Maczuk through the unauthorized use of credit cards and company checks, and also fraudulently negotiated approximately $100,000 in checks from the Berger Levee District of Franklin County General Fund ("BLD"), which is a taxpayer funded agency, in order to cover the embezzled funds from Maczuk. There is also probable cause to believe that Schulte used some of these criminal proceeds

1

to purchase the Suburban (as further described below)in violation of 18 U.S.C. § 1957.  As such, the property described in Attachment A is subject to civil and criminal forfeiture.

4. This affidavit does not contain all of the information known to me in regard to the investigation. However, it contains enough information to establish probable cause to authorize the seizure of the property described in Attachment A.  Although individuals are referred to herein by their initials in an effort to protect their privacy in the event that this affidavit becomes part of the public record, their identities are known to me.  I respectfully submit that the information provided by these individuals is reliable and is corroborated by the independently obtained statements of other individuals as well as, in some cases, by financial records.

## STATUTORY FRAMEWORK

5. 18 U.S.C. § 1343 (wire fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of an interstate telephone call or electronic communication.

6. 18 U.S.C. § 1344 (bank fraud) criminalizes executing or attempting to execute a scheme to obtain moneys, funds, credits or other property under the custody or control of a financial institution by means of false or fraudulent pretenses or representations.

7. 18 U.S.C. § 1957 (the money laundering spending statute) criminalizes knowingly engaging or attempting to engage in a monetary transaction in criminally derived property from a specified unlawful activity in an amount greater than $10,000.  The term "specified unlawful activity" is defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1), and it includes violations of wire fraud (18 U.S.C. § 1343) and bank fraud (18 U.S.C. § 1344).

8. The proceeds of wire and bank fraud are subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or

personal, which constitutes or is derived from proceeds traceable to wire and/or bank fraud is subject to civil forfeiture.  In addition, 28 U.S.C. § 2461(c) provides that, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," then the government can obtain forfeiture of property "as part of the sentence in the criminal case."  Thus, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud is subject to criminal forfeiture.  Finally, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of a violation of Sections 1343 or 1344, affecting a financial institution, is subject to criminal forfeiture.

9.      Property involved in a money laundering offense is subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to civil forfeiture.  In addition, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to criminal forfeiture.  Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime.  These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources.

10.     This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

11.     Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action

against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). As detailed below, acts or omissions in furtherance of the fraud and money laundering scheme under investigation occurred in the Eastern District of Missouri. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. 21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

12. Based on the foregoing, the issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. § 981(b) and 984, and 31 U.S.C. § 5317(c)(2) for civil forfeiture. Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Missouri.

## PROBABLE CAUSE

13. Schulte is the former bookkeeper at Maczuk. Maczuk is headquartered in the Eastern District of Missouri.

14. As fully explained, detailed, and supported below, there is probable cause to believe that Schulte has operated an illegal wire and bank fraud scheme in the Eastern District of Missouri, and that she laundered the criminal proceeds from this scheme to purchase the property described in Attachment A. The investigation has revealed that between approximately January 25, 2018, and February 4, 2020, Schulte fraudulently charged more than $530,000.00 without authorization

4

using at least five Maczuk credit cards that she controlled and/or fraudulently opened without authorization from Maczuk.

## MACZUK OWNER INTERVIEWS

15. On March 2, 2020, your affiant interviewed the owners and family members of Maczuk, including W.E.M. (President), D.W.M. (Vice President), D.L.M. (Treasurer), M.M.B. & R.E.M. Schulte reported to and was supervised by W.E.M., D.W.M. and M.M.B.

16. D.W.M. advised that Schulte was hired approximately two years ago as the bookkeeper (a.k.a Office Manager) at Maczuk.

17. On February 7, 2020, D.W.M. confronted Schulte about payment(s) she claimed to have made to John Deere Financial on behalf of Maczuk. Schulte admitted to D.W.M. that she had not made the payment(s) and had falsified a Maczuk bank statement to make it appear that she had made the payment. Schulte told D.W.M. that she was overwhelmed with work and failed to make the payment to John Deere Financial. Schulte denied that she had stolen any money from Maczuk. D.W.M. immediately fired Schulte.

## MACZUK CREDIT CARDS, PAYPAL and FCCU ACCOUNT

18. Maczuk began an internal investigation into the activities of Schulte during the two years she worked as their bookkeeper. The internal investigation identified unauthorized charges made by Schulte for personal expenses on the following Maczuk credit cards:

   a. William Maczuk Farms, American Express credit card issued in the name of Christen D. Schulte, ending in #1195;

   b. Maczuk Farms, Inc., Capital One Spark Business Visa credit card issued in the name of L.P., ending in #5435;

5

    c. Maczuk Farms, Inc. Capital One Spark Business Visa credit card issued in the name of Christen Schulte, ending in #5898;

    d. Maczuk Farms, Inc., First Bank Mastercard issued in the name of Christen D. Schulte, ending in #3477; and

    e. Maczuk Farms, Inc., First Bank Mastercard issued in the name of Christen D. Schulte, ending in #7004.

19. According to D.W.M., Schulte had no authority to make the fraudulent charges with the five Maczuk credit cards, as detailed throughout this affidavit. Investigation has revealed that Schulte used the five credit cards on more than 1,800 occasions, incurring more than $530,000 in unauthorized charges.

20. On or about January 11, 2019, Schulte opened account ending in #4502 in her name at the First Community Credit Union (the "FCCU Account"). As of February 29, 2020, the balance in the FCCU Account was $4,340.86. Both Schulte and her husband used the FCCU Account to receive payroll amounts from their respective employers. However, as described below, Schulte also used the FCCU Account to receive criminal proceeds from her wire and bank fraud scheme, and to purchase property.

21. From February 15, 2019 to January 31, 2020, there was a total of $100,187.30 in charges posted to the Maczuk credit cards described above that appear on the credit card statements as "PayPal*My31CSchult" (the "Paypal Account"). All of these charges were fraudulent.

22. Over the same time period, there was a total of $95,241.73 in transfers from the Paypal Account to the FCCU Account. All of these funds are criminal proceeds from the aforementioned wire and bank fraud scheme.

6

23. This investigation has revealed that Schulte used these misappropriated and unauthorized credit card charges in a pattern of spending to fund personal expenses and acquire personal property. Schulte frequently made use of electronic wirings in the course of spending the money she embezzled from her employer. This use of wirings included cash advances and payments for vehicles, an RV, jewelry and a Desert Eagle Pistol.

## MACZUK & D.W.M. CHECKS

24. Your affiant learned that, at all relevant times, Maczuk maintained banking relationships with Citizens Bank, including by holding an account ending in #3058 in the name of Maczuk Farms Trucking, LLC (the "Citizens Account"), and Wells Fargo, including by holding an account ending in #0800 in the name of D.W.M. related to a FCS Financial Credit Line (the "WF Account"). Both Citizens Bank and Wells Fargo are financial institutions pursuant to 18 U.S.C. § 20.

25. D.W.M. advised your affiant that Schulte was not a signatory on any Maczuk bank accounts, including the Citizens Account and the WF Account, and was never given authority to sign for any of the Maczuk family members for any purpose.

26. The investigation revealed that Schulte had routinely forged the signatures of W.E.M, D.W.M. and M.M.B. on Maczuk and D.W.M. checks on both the Citizens Account and the WF Account.

27. Schulte prepared and forged the signature of M.M.B. on the following check which was drawn on the Citizens Account:

    a. Check #1861, dated April 8, 2019, payable to Schulte in the amount of $3,300, Memo: "Repairs Reimbursement". This check was deposited in the FCCU Account.

7

28. Schulte prepared and forged the signature of D.W.M. on the following checks which were all drawn on the WF Account, and thereafter deposited them into another Maczuk Farms Trucking account at Citizens Bank in order to conceal her criminal scheme:

   a. Check #441, dated April 17, 2019, payable to Maczuk Farms Trucking in the amount of $20,000;

   b. Check #442, dated April 30, 2019, payable to Maczuk Farms in the amount of $30,000; and

   c. Check #443, dated May 30, 2019, payable to Maczuk Farms in the amount of $20,000.

## BLD ACCOUNT AT THE BANK OF WASHINGTON

29. Separate and apart from his role with Maczuk, W.E.M. is the Treasurer of the Berger Levee District of Franklin County ("BLD").

30. At all relevant times, BLD maintained a banking relationship with the Bank of Washington, including by holding an account ending in #0560 in the name of the Berger Levee District of Franklin County General Fund (the "BLD Account"). The Bank of Washington is a financial institution pursuant to 18 U.S.C. § 20.

31. W.E.M. maintained the checkbook for the BLD Account on location at the Maczuk office where Schulte worked.

32. W.E.M. advised your affiant that Schulte was not a signatory on the BLD account and was never given authority to sign his name.

33. Investigation revealed that Schulte prepared and forged the signature of W.E.M. on the following checks (which total $113,617.09) which were all drawn on the BLD Account and deposited into a Maczuk Farms Trucking account at Citizens Bank in order to conceal the scheme:

8

   a. Check #1473, dated August 28, 2019, payable to Maczuk Farms in the amount of $27,000;

   b. Check #1474, dated September 5, 2019, payable to Maczuk Farms in the amount of $18,000;

   c. Check #1475, dated September 13, 2019, payable to Maczuk Farms in the amount of $10,000;

   d. Check #1476, dated October 10, 2019, payable to Maczuk Farms in the amount of $45,000;

   e. Check #1485, dated February 4, 2020, payable to Maczuk Farms in the amount of $10,000; and

   f. Check #1486, dated February 5, 2020, payable to Maczuk Farms in the amount of $3,617.09.

34. Your affiant worked with other investigators to identify and trace the funds obtained by Schulte as proceeds of her illegal wire fraud scheme. The investigative team has conducted a review of all financial records associated with the investigation, including bank statements, bank deposit records, checks, credit card statements, vehicle, RV, jewelry and Desert Eagle Pistol purchase records and any other financial records obtained during the course of the investigation, in order to trace funds related to the illegal activity and determine the origin of funds used by Schulte to purchase and pay for assets, such as vehicles, an RV, jewelry and a Desert Eagle Pistol.

**PURCHASE OF TRAVEL TRAILER**

35. Investigation has revealed that Schulte used criminal proceeds to purchase a 2019 Primetime Avenger Travel Trailer, VIN: 5ZT2AVRB4KB923014 (the "Travel Trailer") from St. Louis RV.

36. On March 9, 2019, Schulte fraudulently used Maczuk American Express Credit Card ending in #1195 to charge $19,581 on it in order to purchase 2019 Primetime Avenger Travel Trailer, VIN: 5ZT2AVRB4KB923014 (the "Travel Trailer") from St. Louis RV. This credit card charge represents criminal proceeds from the aforementioned wire fraud scheme.

37. On March 19, 2019, Schulte signed a Missouri Department of Revenue Application for Missouri Title and License, to title the Travel Trailer in the name of Christen D. & Christopher Schulte.

38. On April 1, 2019, the Travel Trailer was registered to Christen & Christopher Schulte at 503 Klingsick Ln, Washington, MO 63090 (their residence), with Missouri license plate 16K-0GV.

39. Based on the foregoing, the Travel Trailer is subject to forfeiture as constituting or being derived from criminal proceeds.

## PURCHASE OF RAM PICKUP

40. Investigation has also revealed that Schulte used criminal proceeds to purchase a 2016 Ram 2500 4WD Crew Pickup, VIN: 3C6TR5DT1GG358760 (the "Ram Pickup").

41. On April 10, 2019, Schulte fraudulently caused there to be made a $4,116.30 charge from the Paypal Account to the Maczuk American Express Card ending in #1195. On the same day, Schulte transferred $3,990 from the Paypal Account to the FCCU Account.

42. On April 10, 2019, check #1383, in the amount of $3,500 payable to GMT Auto Sales, was drawn from the FCCU Account as a down payment on the purchase of the Ram Pickup.

Records from GMT Auto Sales show that Schulte was given a $10,694 trade-in allowance on a 2011 Dodge Ram 1500 and financed the remaining $20,000 purchase price through FCCU.

43. From May 31, 2019 to January 31, 2020, nine loan payments totaling $3,740 were made on this loan from the FCCU Account. Each of these payments was preceded by a fraudulent transfer of funds from the Paypal Account as described above.

44. On April 24, 2019, the Ram Pickup was registered to Christen & Christopher Schulte at 503 Klingsick Ln, Washington, MO 63090 (their residence), with Missouri license plate 44H-3DK.

45. On June 25, 2019, Christen & Christopher Schulte titled the Ram Pickup, Lienholder: FCCU.

46. Based on the foregoing, the Ram Pickup is subject to forfeiture as constituting or being derived from criminal proceeds.

## PURCHASE OF SUBURBAN

47. Investigation has also revealed that Schulte used criminal proceeds to purchase a 2018 Chevrolet K1500 Suburban LT, 5.3L, V8, 4X4, VIN: 1GNSKHKC9JR271507 (the "Suburban").

48. On January 31, 2020, Schulte fraudulently caused there to be made a $17,390.40 charge from the Paypal Account to the Maczuk American Express card ending in #1195. On February 3, 2020, Schulte transferred $16,900 from the Paypal Account to the FCCU Account.

49. On February 4, 2020, check #1567, in the amount of $16,950, payable to Modern Auto Company, was drawn from the FCCU Account as a down payment on the Suburban. Records related to the purchase show that Schulte received a $14,506.10 trade-in allowance on a 2013 Dodge Durango, and that she financed the remaining $30,000 purchase price through FCCU.

11

50. From May 31, 2019 to January 31, 2020, 9 payments totaling $3,740 were made on the 2013 Durango loan from Schulte's FCCU account ending in #4502. Each of these payments was preceded by a fraudulent transfer of funds from the Paypal Account as described above.

51. As of the date of this affidavit, a search of the Missouri Department of Revenue determined that Schulte has not titled or registered the 2018 Chevrolet K1500 Suburban LT in the State of Missouri.

52. Based on the foregoing, the Suburban is subject to forfeiture as constituting or being derived from criminal proceeds, and as being involved in a money laundering transaction.

## PURCHASE OF ASSORTED JEWELRY

53. Investigation has also revealed that Schulte used criminal proceeds to purchase assorted jewelry from Altemueller Jewelry.

54. On December 18, 2018, Schulte purchased a "Ladies 14k white gold semi-mount set with a 14K white gold solitaire diamond engagement ring. The diamond is a 1.00 carat round brilliant cut" (the "Engagement Ring") from Altemueller Jewelry for $8,534.93.

55. Schulte fraudulently purchased the Engagement Ring with the Maczuk American Express Credit Card ending in #1195. This credit card charge represents criminal proceeds from the aforementioned wire fraud scheme.

56. On May 2, 2019, Schulte purchased the following pieces of jewelry from Altemueller Jewelry for $410.05:

    a. Two Cascading glamour charms, Clear CZ;

    b. Spinning tree of life silver dangle with clear cubic zirconia and white enamel;

    c. Two True Uniqueness bracelets;

    d. Mother and son heart silver charm with clear cubic zirconia;

  e. Heart of the Family Charm; and

  f. Two Family Heritage, Clear CZ.

57. Schulte fraudulently purchased this jewelry with the Maczuk American Express Credit Card ending in #1195.  This credit card charge represents criminal proceeds from the aforementioned wire fraud scheme.

58. On July 11, 2019, Christen Schulte purchased the following pieces of jewelry from Altemueller Jewelry for $152.39:

  a. Tropical Starfish & Sea Shell, Frosty Mint & Clear CZ; and

  b. Key to My Heart with 14k padlock Bead.

59. Schulte fraudulently purchased this jewelry with the Maczuk American Express Credit Card ending in #1195. This credit card charge represents criminal proceeds from the aforementioned wire fraud scheme.

60. Based on the foregoing, the assorted jewelry described above, including the Engagement Ring, is subject to forfeiture as constituting or being derived from criminal proceeds.

## PURCHASE OF MAGNUM RESEARCH DESERT EAGLE PISTOL

61. Investigation has also revealed that Schulte used criminal proceeds to purchase a Magnum Research Desert Eagle Pistol for her husband Christopher Schulte from Nick's Gun & Pawn.

62. On January 31, 2020, Schulte purchased a Magnum Research Desert Eagle Pistol, serial #DK0054306 from Nick's Gun & Pawn for $2,082.26.

63. Schulte fraudulently purchased the Magnum Research Desert Eagle Pistol with the Maczuk American Express Credit Card ending in #1195.  This credit card charge represents criminal proceeds from the aforementioned wire fraud scheme.

## CONCLUSION

64. Based on the information above, there is probable cause that between on or about January 25, 2018, and February 4, 2020, Schulte fraudulently obtained more than $530,000 from Maczuk through a wire and bank fraud scheme in violation of Title 18, United States Code, Sections 1343 and 1344, and that a portion of these criminal proceeds were used to purchase the Travel Trailer, the Ram Pickup, the Suburban, the Desert Eagle Pistol and assorted jewelry (including the Engagement Ring). In addition, there is probable cause to believe that the down payment for the purchase of the Suburban constitutes a money laundering spending offense in violation of 18 U.S.C. § 1957. As such, I respectfully submit there is probable cause to seize the assets in Attachment A, on the grounds they are derived from the proceeds of wire fraud and are involved in money laundering offenses, and are subject to criminal and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (a)(1)(C), 982(a)(1), 982(a)(2)(A) and 28 U.S.C. § 2461(c).

_____
Eric B. Mills
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this __6th__ day of March, 2020

_____
The Honorable Shirley P. Mensah
United States Magistrate Judge
Eastern District of Missouri

# ATTACHMENT A

A.  2019 Primetime Avenger Travel Trailer, VIN: 5ZT2AVRB4KB923014

B.  2016 Ram 2500 4WD Crew Pickup, VIN: 3C6TR5DT1GG358760

C.  2018 Chevrolet K1500 Suburban LT, 5.3L, V8, 4X4, VIN: 1GNSKHKC9JR271507

D.  14K White Gold Ring with 1.00 Carat Round Brilliant Cut Diamond

E.  Two Cascading glamour charms, Clear CZ

F.  Spinning tree of life silver dangle with clear cubic zirconia and white enamel

G.  Two True Uniqueness bracelets

H.  Mother and son heart silver charm with clear cubic zirconia

I.  Heart of the Family Charm

J.  Two Family Heritage, Clear CZ

K.  Tropical Starfish & Sea Shell, Frosty Mint & Clear CZ

L.  Key to My Heart with 14k padlock Bead.

M.  Magnum Research Desert Eagle Pistol, serial #DK0054306